**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 09-cv-00780-REB-KLM

MARJORIE MISHKIN, and
DAVID MISHKIN, individually and on behalf of all others similarly situated,

    Plaintiffs,

vs.

ZYNEX INC., f/k/a ZYNEX MEDICAL HOLDINGS, INC.,
THOMAS SANDGAARD, and
FRITZ G. ALLISON,

    Defendants.

## ORDER DENYING MOTION TO DISMISS

**Blackburn, J.**

This matter is before me on the **Defendants' Motion To Dismiss** [#69][1] filed May 17, 2010. The plaintiffs filed a response [#73] and the defendants filed a reply [#75]. I deny the motion.

### I. JURISDICTION

I have jurisdiction over this case under 15 U.S.C. § 78aa, and 28 U.S.C. § 1331.

### II. STANDARD OF REVIEW

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), I must determine whether the allegations in the complaint are sufficient to state a claim within the meaning of Fed. R. Civ. P. 8(a). I must accept all well-pleaded allegations of the

---

[1] "[#69]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

complaint as true. ***McDonald v. Kinder-Morgan, Inc.***, 287 F.3d 992, 997 (10th Cir. 2002). "However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." ***Fernandez-Montes v. Allied Pilots Association***, 987 F.2d 278, 284 (5th Cir. 1993); ***see also Ruiz v. McDonnell***, 299 F.3d 1173, 1181 (10th Cir. 2002) ("All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true."), ***cert. denied***, 123 S.Ct. 1908 (2003). I review the challenged portion of a complaint to determine whether it "'contains enough facts to state a claim to relief that is plausible on its face.'" ***Ridge at Red Hawk, L.L.C. v. Schneider***, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting ***Bell Atlantic Corp. v. Twombly***, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)); ***see also Ashcroft v. Iqubal***, ___ U.S. ___, 129 S.Ct. 1937 (2009). "Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." ***Id.*** (emphases in original).[2] Nevertheless, the standard remains a liberal

---

[2] ***Twombly*** rejected and supplanted the "no set of facts" language of ***Conley v. Gibson***, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Tenth Circuit clarified the meaning of the "plausibility" standard:

> "plausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.
>
> This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them. "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."

one, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City and County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quoting *Twombly*, 127 S.Ct. at 1965) (internal quotation marks omitted).

Two additional standards are relevant to the defendants' motion. The plaintiffs allege securities fraud claims under Section 10(b) of the Securities Exchange Act of 1934 (the 1934 Act), 15 U.S.C. § 78j(b), and Rule 10(b)(5) of the Securities and Exchange Commission, 17 C.F.R. § 240.10b. In addition, the plaintiffs allege a related control person claim under Section 20(a) of the 1934 Act, 15 U.S.C. § 78t, against the two individual defendants . Claims sounding in fraud must satisfy the heightened pleading requirements of FED. R. CIV. P. 9(b). In addition, claims under § 10(b) must satisfy the pleading requirements of the Private Securities Litigation Reform Act of 1995 (PSLRA), as required by 15 U.S.C. § 78u-4(b)(1) and (2). Generally, the PSLRA is seen as imposing a standard of pleading which is more strict than that of Rule 9(b). *City of Philadelphia v. Fleming Companies, Inc.*, 264 F.3d 1245, 1258 (10th Cir. 2001).

### III. FACTUAL ALLEGATIONS

This case is a proposed class action on behalf of a plaintiff class consisting of all persons and entities, other than the defendants, who purchased or otherwise acquired securities of defendant, Zynex, Inc., between May 21, 2008, and March 31, 2009. The operative complaint is the plaintiffs' **Consolidated Class Action Complaint** [#64] field April 19, 2010. Zynex makes, sells, and rents medical devices for electrotherapy and stroke//spinal cord injury rehabilitation. The plaintiffs allege that during the class period,

---

*Robbins v. Oklahoma*, 519 F.3d 1242, 1247-48 (10th Cir. 2008) (quoting *Twombly*, 127 S.Ct. at 1974; internal citations and footnote omitted).

3

the defendants engaged in a systematic scheme to over-bill insurance companies from which Zynex routinely sought payment for the sale and rental of Zynex products. For example, the plaintiffs allege that Zynex routinely billed insurers far more than those insurers previously had paid for the same product and far more than was allowed under statutorily mandated fee schedules that were applicable to many transactions. In essence, the plaintiffs allege that Zynex routinely billed more than it reasonably expected to be paid. The plaintiffs contend that during the class period Zynex reported revenue based on the amount Zynex billed insurance companies in a quarter and not based on the amount actually collected. By billing more than Zynex reasonably expected to be paid, and by reporting revenue based on its inflated billings, the plaintiffs allege that Zynex reported revenue to investors even though Zynex and the two individual defendants knew that Zynex would never collect much of the reported revenue. The two individual defendants are Thomas Sandgaard, the Chief Executive Officer of Zynex, and Fritz Allison, the Chief Financial Officer of Zynex.

Many of the specific allegations in the complaint are based on reports from seven different confidential witnesses (CWs) on whom the plaintiffs rely for details of Zynex's operations at the relevant times. Generally, as described in the complaint, each of the CWs were employed with Zynex and observed events detailed in the complaint.

On April 1, 2009, Zynex issued a press release announcing a revision of its unaudited financial statements for the first three quarters of 2008. *Amended complaint* [#64] filed April 19, 2010, ¶ 83. The revision of the financial statements for these three quarters resulted in a substantial decrease in net accounts receivable, net revenues, net income, and earnings per share for each of those quarters. Zynex explained in the press release that the revisions were "based on a re-evaluation of the estimated

4

allowance for provider discounts that management believes should have been utilized in 2008." *Id.* Zynex stated in the press release that the previously issued financial statements and press releases for the first three quarters of 2008 "should not be relied upon." *Id.* Immediately after this press release was issued, the price of Zynex's shares declined by approximately 56 percent.

Based on the factual allegations in the complaint, the plaintiffs assert the following claims:

> (1) A claim against all defendants under Section 10(b) of the Securities Exchange Act of 1934 (the 1934 Act), 15 U.S.C. § 78j(b), and Rule 10(b)(5) of the Securities and Exchange Commission, 17 C.F.R. § 240.10b-5; and
>
> (2) A claim under under Section 20(a) of the 1934 Act against the two individual defendants.

### IV. § 10(b) & THE PSLRA - GENERALLY

Section 10(b) makes it unlawful for any person to employ any manipulative or deceptive device, in contravention of the rules and regulations of the Securities and Exchange Commission (SEC), in connection with the purchase or sale of a security. 15 U.S.C. § 78j(b). SEC rule 10(b)(5) provides that it is unlawful for a person "to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5. To state a claim under § 10(b) and rule 10b-5, a plaintiff must allege that the defendant: (a) made an untrue statement of material fact or failed to state a material fact; (b) in connection with the purchase or sale of a security; (c) with scienter; (d) that the plaintiff relied on the misrepresentation; and (e) that the plaintiff sustained damages as a proximate result of the misrepresentation. ***See, e.g., Anixter v. Home-Stake Products***, 77 F.3d 1215, 1225 (10th Cir. 1996).

The level of scienter required to support a § 10(b) claim is intent to deceive, manipulate, or defraud.  ***City of Philadelphia v. Fleming Companies, Inc.***, 264 F.3d 1245, 1259 (10th Cir. 2001).   Proof of recklessness is sufficient to establish a § 10(b) claim.  In this context, a defendant acts recklessly when his or her conduct amounts to an extreme departure from the standards of ordinary care and presents a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of the danger.  ***Id***. at 1260.  In the context of a claim based on non-disclosure of material facts, a plaintiff must show that the defendant (1) knew of the material fact; and (2) knew that failure to reveal the fact likely would mislead investors.  ***Fleming***, 264 F.3d at 1261. In essence, § 10(b) imposes liability for fraudulent statements made in connection with the purchase or sale of securities.

The PSLRA imposes specific pleading requirements for complaints alleging securities fraud under § 10(b).  In relevant part, the PSLRA provides:

(1) Misleading statements and omissions

In any private action arising under this chapter in which the plaintiff alleges that the defendant–

(A) made an untrue statement of a material fact; or

(B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading;

the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

(2) Required state of mind

(A) In general

6

> Except as provided in subparagraph (B), n any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C. § 78u-4(b)(1) and (2). Generally, the PSLRA is seen as imposing a standard of pleading which is more strict than that of Rule 9(b). **Fleming**, 264 F.3d at 1258.

In sum, the PSLRA requires the plaintiffs (1) to specify each statement alleged to have been misleading, and the reason or reasons the statement is misleading; and (2) with regard to each act or omission alleged to violate § 10(b), to state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind, *i.e.* scienter. **See, e.g., Pirraglia v. Novell, Inc.**, 339 F.3d 1182, 1186 (10th Cir. 2003). Courts must look to the totality of the pleadings to determine whether the plaintiffs' allegations support a strong inference of fraudulent intent, or scienter, as required by the PSLRA. **Fleming**, 264 F.3d at 1262. In this context, a strong inference of scienter is "a conclusion logically based upon particular facts that would convince a reasonable person that the defendant knew a statement was false or misleading." **Adams v. Kinder Morgan, Inc.**, 340 F.3d 1083, 1105 (10th Cir. 2003). I have considered the totality of the plaintiffs' allegations in determining whether those allegations meet the requirements of the PSLRA.

When considering the adequacy of an inference of scienter under the PSLRA, a court must consider negative inferences that may be drawn against the plaintiff. **Pirraglia v. Novell, Inc.**, 339 F.3d 1182, 1187 - 88 (10th Cir. 2003). In other words, a court must evaluate a plaintiffs' suggested inference in the context of other reasonable

inferences that may be drawn from the facts alleged. *Id*. The inference of scienter suggested by the plaintiffs must be strong in light of the overall context of the allegations, including reasonable inferences contrary to the plaintiff's position. *Id.*

## V. ANALYSIS

The defendants advance three principal arguments in support of their motion to dismiss: (A) that the plaintiffs fail to allege any actionable misleading statement or omission; (B) that the plaintiffs fail to allege particularized facts supporting a strong inference of scienter, as required by the PSLRA; and (C) that, because the plaintiffs' allegations in support of their § 10(b) claim are inadequate, their allegations in support of their § 20(a) claim also are inadequate. Applying the applicable standards of review, I disagree with each of these contentions.

### A. Misleading Statement or Omission

The defendants argue that the plaintiffs' allegations do not, with respect to each alleged misrepresentation, specify particularized facts demonstrating that the statement was false or misleading when it was made. Having reviewed the plaintiffs' allegations concerning the specific statements made by the defendants on which the plaintiffs' claims are based, I conclude that the plaintiffs have alleged with sufficient specificity the statements alleged to have been materially false or misleading and the reasons the statements were materially false or misleading when each statement was made. *Complaint*, ¶¶ 48 - 79. This analysis includes Zynex's disclosure of the Anthem refund request. *Complaint*, ¶¶ 68, 72.

The defendants argue that CEO Sandgaard's statements in a November 20, 2008, press release are not actionable because they are forward looking statements protected by the safe-harbor provision of the PSLRA. 15 U.S.C. § 78u-5(i)(1). The

safe harbor applies to statements that are forward looking and are accompanied by cautionary language. The safe harbor provision does not apply to statements of current or historical fact. **Grossman v. Novell, Inc.**, 120 F.3d, 112, 1123(10th Cir. 1997). However, some parts of the November 20, 2008, press release discuss present or historical facts, which do not fall within the safe harbor provision. For example, the press release says that "(s)ales and rentals to date in the fourth quarter of 2008 continue at a strong pace . . . ." *Complaint*, ¶¶ 77 - 79. This statement of present or historical fact is highlighted in the complaint. Further, to the extent the defendants rely on cautionary language in the press release, that cautionary language likely does not shield the relevant statements, assuming the other factual allegations in the complaint to be true.

The defendants argue also that the statements described in paragraphs 8, 50, 65, and 90 of the complaint are vague statements of optimism that are not actionable under § 10(b). Assuming the allegations in the complaint to be true, the plaintiffs argue, each of these statements are, in essence, statements that Zynex's orders and revenues had increased measurably compared to previous periods. To some extent, these statements include statements of present and past fact as opposed to pure expressions of optimism about the future. To the extent these statements are expressions of optimism, such expressions can be actionable when, as alleged here, the defendants were aware of specific facts that undermined materially the basis for the expressions of optimism. **See, e.g., ACA Financial Guaranty Corp. v. Advest, Inc.**, 512 F.3d 46, 62 n. 11 (1st Cir. 2008).

### B. Strong Inference of Scienter

The defendants argue correctly that accounting errors alone are not sufficient to

support a strong inference of scienter. ***City of Philadelphia v. Fleming Companies, Inc.***, 264 F.3d 1245, 1261 (10th Cir. 2001). However, in the context of other particularized and relevant facts, accounting errors are relevant to determining whether allegations are sufficient to support a strong inference of scienter. ***Adams v. Kinder Morgan, Inc.***, 340 F.3d 1083, 1105 - 1106 (10th Cir. 2003). Similarly, a desire to enhance a company's business prospects or an individual's desire to earn incentive compensation, without more, are also not sufficient to support a strong inference of scienter. However, a defendant's financial motivations are not irrelevant to this issue. The First Circuit has noted: "Stock sales by insiders can supply evidence of scienter (under the PSLRA). 'The vitality of the inference to be drawn depends on the facts, and can range from marginal to strong.'" ***In re Cabletron Systems, Inc***., 311 F.3d 11, 40 (1st Cir. 2002) (***quoting Greebel v. FTP Software, Inc.,*** 194 F.3d 185, 197-98 (1st Cir. 1999)). Allegations concerning a defendant's motive and opportunity to commit securities fraud may be considered in determining whether the "plaintiffs' allegations, taken as a whole, give rise to a strong inference of scienter." ***Fleming***, 264 F.3d at 1263.

The defendants argue also that the plaintiffs' reliance on confidential witnesses undermines fatally the plaintiffs' effort to allege specific facts that support a strong inference of scienter. The defendants argue that none of the CWs was involved in Zynex's accounting, and, thus, they do not have personal knowledge of facts relevant to the defendants' scienter. However, as alleged in the complaint, the CWs generally have personal knowledge of Zynex's billing operations during the relevant period, and they describe events involving both Sandgaard and Allison and concerning efforts to over-bill insurance companies in the manner described in the complaint. For example,

some of the CWs describe how Zynex, with the knowledge of Sandgaard and Allison, continued to bill insurance companies for amounts far in excess of the amounts that could be collected from these companies. Sandgaard and Allison insisted that this practice continue, the CWs represent, even when Sandgaard and Allison were confronted repeatedly with facts showing that collection of the billed amounts was essentially impossible. The plaintiffs allege that, despite their knowledge that amounts billed by Zynex were far in excess of the amounts Zynex would collect, the defendants continued to recognize revenue based on billed amounts and continued to report those revenue figures to the public. In this context, the CWs are alleged to have personal knowledge of facts that are directly relevant to the scheme alleged in the complaint.

The defendants argue also that allegations based on statements by confidential witnesses are subject to a steep discount when evaluating the sufficiency of a complaint. *See, e.g., Higginbotham v. Baxter Intern., Inc.*, 495 F.3d 753, 757 (7th Cir. 2007). The pitch of the discount accorded to confidential witnesses varies with the specificity and consistency of the allegations in the complaint. The identity of a confidential witness is not crucial, at the pleading stage, if

> the facts alleged in the plaintiffs' complaint are detailed enough to
> support a reasonable belief that the defendant's statements identified by
> the plaintiffs were false or misleading. The level of factual specificity
> required to meet this standard may put defendants on notice of precisely
> what they are alleged to have done wrong and permit them to defend
> against the charge.

*Adams v. Kinder Morgan, Inc.*, 340 F.3d 1083, 1102 (10th Cir. 2003). The Eleventh Circuit has taken a similar position.

> (T)he weight to be afforded to allegations based on statements proffered
> by a confidential source depends on the particularity of the allegations

11

>made in each case, and confidentiality is one factor that courts may
>consider. Confidentiality, however, should not eviscerate the weight
>given if the complaint otherwise fully describes the foundation or basis of
>the confidential witness's knowledge, including the position(s) held, the
>proximity to the offending conduct, and the relevant time frame.

***Mizzaro v. Home Depot, Inc.***, 544 F.3d 1230, 1240 (11th Cir. 2008). In this case, the allegations based on the statements of the CWs are entitled to significant weight because the complaint describes the bases of the CWs' knowledge, the positions they held, their exposure to the relevant conduct, and the relevant time frame.

A strong inference of scienter is "a conclusion logically based upon particular facts that would convince a reasonable person that the defendant knew a statement was false or misleading." ***Adams v. Kinder Morgan, Inc.***, 340 F.3d 1083, 1105 (10th Cir. 2003). The totality of the plaintiffs' allegations support a reasonable conclusion that Sandgaard, Allison, and Zynex were aware that the amounts Zynex routinely billed to insurance companies, Zynex's primary source of revenue, were far in excess of the amounts that Zynex actually would collect or could reasonably expect to collect on those bills. The allegations support also a reasonable conclusion that the defendants knew that Zynex's relevant statements to the public concerning Zynex's revenue and profits were materially false because those statements were based on the intentionally inflated amounts billed to insurance companies, as opposed to reasonable estimates of the payments Zynex actually would receive. The alleged direct participation of Sandgaard and Allison in these practices supports a strong inference of scienter, as does the magnitude of the corrections to Zynex's financial statements once Zynex recognized publicly that it could not collect anything close to the amounts routinely billed to insurers. The plaintiffs' allegations concerning the financial motives of Sandgaard and Allison provide, at most, only thin support for a

strong inference of scienter. However, even absent the allegations of financial motive, there is ample support for the inference of scienter.

The defendants argue that, taking the plaintiffs' allegations as a whole, non-fraudulent explanations of the relevant events and non-fraudulent errors in judgment are more cogent explanations for the relevant events, as compared to the plaintiffs' allegations of fraud. I disagree. Considering negative inferences that may be drawn against the plaintiffs, based on the totality of their allegations, I conclude that the inference of scienter suggested by the plaintiffs is strong when compared to reasonable negative inferences.

### C. § 20(a) Control Person Claim

The plaintiffs assert a claim under § 20(a) of the 1934 Act, 15 U.S.C. § 78t, against Sandgaard and Allison. Under § 20(a), "a person who controls a party that commits a violation of the securities laws may be held jointly and severally liable with the primary violator." ***Maher v. Durango Metals, Inc.***, 144 F.3d 1302, 1305 (10th Cir. 1998). A § 20(a) claim must be predicated on liability under § 10(b) and Rule 10b-5.

In their motion to dismiss, the defendants argue that the § 20(a) claim must be dismissed because the plaintiffs have not pled adequately a primary claim that Zynex violated § 10(b) and Rule 10b-5. However, I have found that the plaintiffs have stated a claim under § 10(b) and Rule 10b-5 against Zynex. Therefore, I conclude also that the plaintiffs' § 20(a) claim has been pled adequately and is not subject to dismissal.

## VI.  CONCLUSION & ORDER

Applying the standards of F<small>ED</small>. R. C<small>IV</small>. P. 12(b)(6) and 9(b) as well as the standards of the PSLRA, I conclude that the allegations in the plaintiffs' complaint are sufficient to state claims under § 10(b), Rule 10b-5, and § 20(a).

**THEREFORE, IT IS ORDERED** that the **Defendants' Motion To Dismiss** [#69] filed May 17, 2010, is **DENIED**.

Dated March 30, 2011, at Denver, Colorado.

                                          **BY THE COURT:**

                                          */s/ Bob Blackburn*
                                          Robert E. Blackburn
                                          United States District Judge